In re Roy P. SCHOENFELD, Debtor.

Martin W. TOMBERG, Plaintiff,

v.

Roy P. SCHOENFELD, Defendant.

Bankruptcy No. 82–02236–BKC–JAG.
Adv. No. 83–0068–BKC–JAG–A.

United States Bankruptcy Court,
S.D. Florida.

April 8, 1983.

Myrna D. Bricker, c/o Britton, Cohen, Kaufman & Schantz, Miami, Fla., for debtor-defendant.

Charles D. Franken, c/o Law Offices of Gerald Beyer, P.A., Fort Lauderdale, Fla., for plaintiff.

## FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

This matter was tried on a complaint objecting to the discharge of the debt of the debtor, Roy P. Schoenfeld, to Martin Tomberg. The court concludes that the debt is non-dischargeable under 11 U.S.C. § 523(a)(6).

At the time of the events in question the debtor was a shareholder of Cole-Roy, Inc., together with Mr. and Mrs. Louis Cole. The debtor managed a store which was operated by the corporation and Cole kept the books and handled the bank accounts. In 1981 a similar store, Wholly Harvest, began operation in the same shopping center after reaching an agreement with Cole-Roy, by which Wholly Harvest would make payments to Cole-Roy (see Plaintiff's Exhibit No. 2). Cole-Roy was already in serious financial trouble, and so at the same time, in June, 1981, the corporation obtained a loan from Mr. Cole's cousin, Martin Tomberg (Plaintiff's Exhibit No. 3). The promissory note was signed by Schoenfeld and Cole in their individual capacities as well as on behalf of the corporation. The loan was for $8,000 and payment was to commence in September. The corporation was due to receive $8,000 from Wholly Harvest in September. In conjunction with the loan, the payments due from Wholly Har-

vest were assigned to Tomberg (Plaintiff's Exhibit No. 4). Wholly Harvest was not given any notice of the assignment because Cole convinced Tomberg that it was undesirable to make the matter public.

The $8,000 loan was spent within a few days to pay creditors. The debtor then prevailed upon Wholly Harvest to pay $5,000 immediately, rather than in September. Five hundred dollars was paid to the debtor to fund his vacation, and the other $4,500 was deposited into the corporate checking account. Schoenfeld did not inform Cole that he had obtained the money, because he wanted to "surprise" him. During that period (and for over a year) the checking account had been almost continuously overdrawn, up to an amount of $20,-000. As a result, Cole checked on the account almost every day, and was indeed surprised to find the extra money in the account. Cole testified that he did not know the money was from Wholly Harvest until after it had been spent, but he also testified that he knew there must have been a mistake, and the court finds that he was equally at fault with the debtor for spending the money rather than repaying Tomberg.

Schoenfeld admitted that he knew it was wrong to get and use the money from Wholly Harvest when its debt had been "sold" to Tomberg. However, he was desperate to save the store, and September, when payment was due to Tomberg, was a long way off. Although he stated that he intended to pay Tomberg from other sources in the fall, he admitted that the summer was the slowest period for the store, and he did not come up with any explanation as to where he expected to obtain the money from over the summer.

Although the debtor did not pay back the $500 to Cole-Roy, as such, he subsequently lent the company $3,700 from life insurance policies he cashed, and there may have been another later loan to the company. At the time he "borrowed" the $500, the corporation was indebted to him for at least $30,-000, although it was very thinly capitalized at that time. However, even if Schoenfeld had wrongfully deprived the corporation of the $500 which this court does not find, it would be irrelevant to plaintiff's case because it was a matter between the debtor and the corporation and could not affect the transaction with Tomberg which had previously been completed.

The note to Tomberg was partially repaid from store receipts but no payments were ever made by Schoenfeld or Cole individually, although checks may have been written from Cole's personal account after cash was taken from the day's receipts.

Plaintiff asserts that the debt is non-dischargeable because it was obtained by fraud (§ 523(a)(2),) or is a debt for willful and malicious injury (§ 523(a)(6).) The evidence entirely fails to show any evidence of fraud in the obtaining of the loan from Mr. Tomberg. Cole arranged for the loan and there was not a hint that it was done as part of a scheme to defraud Tomberg.

■ The decision on the second point is more difficult. However, the debtor fully intended to permanently deprive Tomberg of a valuable right, his right to look to the payments from Wholly Harvest if Cole-Roy failed to pay its debt to him. Although the court concludes that Schoenfeld did not intend any permanent injury to Tomberg, he did know that he was taking away Tomberg's security, and that Cole-Roy would have to repay Tomberg out of funds which were very doubtful of receipt as of the date the Wholly Harvest funds were taken. This constituted a conversion which is non-dischargeable under § 523(a)(6).

■ The debtor argues that there was no valid assignment to Tomberg and that therefore Tomberg was not deprived of anything by the debtor's action. Although the assignment is inartfully drawn, it is quite clear that the Wholly Harvest payments were being assigned to Tomberg as security. If there is any ambiguity in the document, the debtor's testimony clearly indicates that that was the intention of all involved. The debtor also asserts the lack of perfection of the assignment as a defense. This is not a defense between a

debtor and its secured creditor, but can only be raised by a third party.

The debt of Schoenfeld to Tomberg as a result of the debtor's conversion, in the amount of $8,695.25, will not be discharged.

 It may be inequitable that Tomberg made no challenge to the dischargeability of Cole's liability in his cousin's bankruptcy. But the wrongdoing of one debtor, or even his cooperation with a joint creditor against his co-debtor, does not alleviate the effect of a debtor's own acts.

Pursuant to Rule 921(a), a separate Final Judgment incorporating these Findings and Conclusions is being entered this date.